## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH McCARTY, | : | CIVIL ACTION |
| Plaintiff, | : | No. _____ |
| v. | : | JURY TRIAL DEMANDED |
| MERCY CATHOLIC MEDICAL CENTER OF SOUTHEASTERN PENNSYLVANIA d/b/a MERCY FITZGERALD HOSPITAL, | : : | |
| and | : | |
| TRINITY HEALTH OF THE MID-ATLANTIC REGION, | : : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiff Joseph McCarty ("Plaintiff" or "Mr. McCarty"), by and through his undersigned counsel, brings this civil action against Defendants Mercy Catholic Medical Center of Southeastern Pennsylvania d/b/a Mercy Fitzgerald Hospital ("Mercy Catholic") and Trinity Health of the Mid-Atlantic Region ("Trinity Mid-Atlantic") (collectively, "Defendants"), and in support thereof avers as follows:

## I. INTRODUCTION

1. This is an age discrimination action arising from Defendants' termination of Plaintiff Joseph McCarty, a 74-year-old security officer with approximately thirty-three years of service, after he responded to a volatile emergency-room incident involving an aggressive individual who threatened hospital staff, patients, and visitors.

2. Mr. McCarty was not terminated for poor performance, absenteeism, misconduct, or inability to perform his job. He was a long-term, reliable, punctual security employee who had performed his duties for decades.

3. On January 15, 2024, an unstable and aggressive individual entered the emergency room at Mercy Fitzgerald Hospital, yelled for a doctor, frightened emergency-room personnel, and made a gesture as if he were shooting a gun.

4. Mr. McCarty called for backup, directed the individual toward emergency registration, asked that police be called, and assisted other security personnel in restraining the individual after a struggle began.

5. During the incident, Mr. McCarty was assaulted and injured in the line of duty. The individual punched and kicked him, scratched his eyelid, pulled his hair, and bit him on the leg.

6. Rather than support a decades-long employee who was injured while attempting to protect hospital staff and the public, Defendants suspended Mr. McCarty and then terminated him four days after the incident.

7. Defendants claimed that a video showed Mr. McCarty making a kicking motion during the struggle. Mr. McCarty denies kicking the individual. Upon information and belief, assuming the video has been retained and preserved fully as required, the video does not show the full frame and does not show the alleged conduct from Mr. McCarty. On the contrary, upon information and belief, it merely shows him attempting to reposition himself as officers arrive.

8. Defendants treated the substantially younger security personnel involved in the same incident more favorably and did not terminate them.

9. Defendants' stated reason for termination was false, incomplete, exaggerated, selectively credited, and insufficient to justify terminating a 74-year-old employee with more than three decades of satisfactory service.

10. Defendants used the January 15, 2024 emergency-room incident as a pretext to remove Mr. McCarty because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

## II. THE PARTIES

11. Plaintiff Joseph McCarty is an adult individual who resides in Exton, Chester County, Pennsylvania.

12. Mr. McCarty was born in 1949 and was 74 years old at the time of his termination.

13. Defendant Mercy Catholic Medical Center of Southeastern Pennsylvania is a Pennsylvania nonprofit corporation that owns and/or operates Mercy Fitzgerald Hospital ("the Hospital"), located at 1500 Lansdowne Avenue, Darby, Delaware County, Pennsylvania 19023, and that conducts business within this District.

14. Defendant Trinity Health of the Mid-Atlantic Region is a Pennsylvania nonprofit corporation that, directly and/or through affiliated entities, owns, operates, manages, and/or controls a regional health system doing business as "Trinity Health Mid-Atlantic," which includes Mercy Fitzgerald Hospital, and that conducts business within this District.

15. At all relevant times, Mercy Fitzgerald Hospital was owned, operated, managed, and controlled by Defendants under common ownership, common management, and common control.

16. At all relevant times, Defendants' operations were interrelated. On information and belief, Defendants shared common branding, common management personnel, common

employment policies and employee handbooks, common payroll and benefits administration, common information systems, and common administrative and human-resources services with respect to employees working at Mercy Fitzgerald Hospital, including Plaintiff.

17.    At all relevant times, Defendants maintained centralized control of labor relations and human-resources functions for employees working at Mercy Fitzgerald Hospital, including the formulation, adoption, and administration of the employment policies applied to Plaintiff and relied upon in his suspension and termination.

18.    At all relevant times, each Defendant possessed and/or exercised the authority to hire, fire, discipline, supervise, direct, and control security personnel working at Mercy Fitzgerald Hospital, including Plaintiff, and to set the terms and conditions of their employment, including compensation, scheduling, policies, discipline, and discharge.

19.    At all relevant times, Defendants operated as a single integrated enterprise and/or single employer, and/or as joint employers, with respect to Plaintiff's employment, and each Defendant was Plaintiff's "employer" within the meaning of the ADEA and the PHRA.

20.    At all relevant times, Defendants, individually and/or collectively, employed Plaintiff, controlled the terms and conditions of his employment, maintained human-resources functions, administered employment policies, and made the decisions to suspend and terminate Plaintiff.

21.    At all relevant times, Defendants, individually and/or collectively, employed more than twenty (20) employees—on information and belief, more than one thousand (1,000) employees—and were engaged in an industry affecting commerce, and each was therefore an employer covered by the ADEA. 29 U.S.C. § 630(b).

22.    At all relevant times, Defendants, individually and/or collectively, employed more than four (4) employees, and each was an employer covered by the PHRA. 43 P.S. § 954(b).

23.    Defendants are jointly and severally liable for the unlawful conduct alleged herein.

### III. JURISDICTION, VENUE, AND EXHAUSTION

24.    This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c).

25.    This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and form part of the same case or controversy as Plaintiff's federal claims.

26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices occurred in this District, Plaintiff worked in this District, Defendants conduct business in this District, and relevant employment records and witnesses are located in this District.

27.    On or about March 12, 2024, within 300 days of his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed as EEOC Charge No. 530-2024-04330, which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") and docketed as PHRC Case No. 202316729.

28.    More than one year has elapsed since the dual-filing of Plaintiff's charge with the PHRC. By letter dated March 20, 2025, the PHRC notified Plaintiff pursuant to Section 12(c) of the PHRA, 43 P.S. § 962(c), of his right to bring an action within two years of said date based on the PHRA violations alleged in his complaint. Plaintiff has accordingly exhausted his administrative remedies under the PHRA.

29. On May 26, 2026, the EEOC issued Plaintiff a Notice of Right to Sue upon request, more than 180 days after the filing of his charge.

30. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

31. Plaintiff has satisfied all administrative prerequisites to suit under the ADEA and the PHRA.

## IV. FACTUAL ALLEGATIONS

### A. Mr. McCarty's Thirty-Three Years of Service

32. Mr. McCarty worked for Defendants in a security position at Mercy Fitzgerald Hospital for approximately thirty-three years, beginning in or around 1991.

33. Mr. McCarty performed his job duties in a hospital environment where security personnel were expected to respond to emergencies, volatile individuals, threats to staff and patients, and requests for assistance from hospital personnel.

34. Mr. McCarty was a punctual, dependable, and dutiful employee throughout his decades of employment.

35. Mr. McCarty had institutional knowledge, experience, and judgment developed over decades of working security in a hospital setting.

36. Before the January 15, 2024 incident, Defendants had no legitimate basis to terminate Mr. McCarty's employment.

37. Mr. McCarty's age was known to Defendants, including to management and Human Resources.

**B.     The January 15, 2024 Emergency-Room Incident**

38.   On January 15, 2024, at approximately 5:00 a.m., an individual entered the emergency room yelling that he needed a doctor.

39.   The individual stated that he had been to the crisis unit but that no one had answered the door.

40.   Mr. McCarty informed the individual that the crisis unit was closed and directed him to the emergency-room registration clerk for medical attention.

41.   The individual became louder and more agitated.

42.   The individual referred to Mr. McCarty as the "old man" when speaking to the registration clerk.

43.   The individual's conduct was erratic, volatile, loud, and alarming to emergency-room personnel.

44.   Mr. McCarty called for backup because he reasonably believed the situation could escalate and present a safety risk.

45.   Two other security officers responded to Mr. McCarty's request for backup.

46.   The registration clerk asked whether security could remove the individual because he was frightening her.

47.   As the responding officers approached, the individual became louder and made a motion as if he were shooting a gun.

48.   The individual's conduct created an immediate safety concern for hospital employees, patients, visitors, and the public.

49.   The officers attempted to escort the individual away from emergency-room personnel.

50.   A struggle ensued.

51. During the struggle, Mr. McCarty went to the phone and asked the officer at the security base to call 911 for law-enforcement assistance.

52. Mr. McCarty then continued to assist the other officers in restraining the individual.

53. The individual assaulted Mr. McCarty during the incident.

54. The individual kicked and punched Mr. McCarty in the left eye, scratched his eyelid, pulled his hair, and bit him on the left leg.

55. The other officers also sustained injuries during the struggle.

56. Law enforcement arrived, placed the individual in handcuffs, and arrested him.

57. Mr. McCarty was injured in the course and scope of his employment.

58. Mr. McCarty acted in good faith and in furtherance of hospital safety, employee safety, patient safety, and public safety.

## C.   Defendants' Investigation and Suspension

59. After the incident, Defendants' Human Resources department conducted an investigation.

60. Defendants promptly suspended Mr. McCarty until further notice.

61. Human Resources later claimed that video footage showed Mr. McCarty making a kicking motion.

62. Mr. McCarty denies kicking the individual.

63. The video relied upon by Defendants did not show the full frame and did not accurately depict Mr. McCarty's positioning, movement, and role during the struggle.

64. The full context would have shown that Mr. McCarty was attempting to get into a better position to assist the other officers most involved in restraining the individual.

65. Mr. McCarty informed Human Resources that he did not kick the individual.

66. Mr. McCarty also informed Human Resources that the video did not show the full picture.

67. Defendants did not fairly consider that Mr. McCarty had requested law-enforcement assistance and attempted to protect hospital staff and the public.

68. Defendants did not fairly consider Mr. McCarty's thirty-three years of service before deciding to terminate him.

**D.    The Termination**

69. On or about January 19, 2024, four days after the incident, and while Mr. McCarty was recovering from the injuries inflicted on him in the line of duty, Defendants terminated his employment.

70. Defendants claimed that Mr. McCarty violated a commitment to safety.

71. Defendants also claimed that Mr. McCarty violated a policy concerning responding to requests for information or assistance in a timely and supportive manner.

72. Those stated reasons were false, incomplete, and pretextual.

73. Mr. McCarty responded promptly to an emergency-room safety situation.

74. Mr. McCarty called for backup.

75. Mr. McCarty asked that 911 be called.

76. Mr. McCarty helped restrain an individual who was acting erratically, frightening emergency-room personnel, making a gun-like gesture, and physically assaulting security officers.

77. Mr. McCarty's actions were consistent with hospital safety and public safety, and with his security role.

78. Mr. McCarty did not act with intent to harm the individual, did not use force for an improper purpose, and did not engage in conduct warranting termination.

79. Defendants ignored the real-world circumstances of the emergency and substituted a selective, after-the-fact interpretation of incomplete video footage.

80. Defendants' stated explanation was unworthy of credence.

81. Defendants applied no progressive discipline, lesser sanction, retraining, or counseling. Defendants moved directly to termination of a thirty-three-year employee four days after he was assaulted at his post.

82. Defendants used the incident as an opportunity to terminate an older employee who had worked for Defendants for decades. But for his age, Plaintiff would not have been terminated.

**E.     Younger Comparators and Pretext**

83. Two other security officers responded to the same incident.

84. Those officers were substantially younger than Mr. McCarty.

85. Those officers participated in the same overall response to the same volatile individual during the same struggle.

86. Those officers were not terminated.

87. Defendants treated Mr. McCarty more harshly than the substantially younger employees involved in the same event.

88. Mr. McCarty was the oldest or among the oldest security employees involved in the incident and, on information and belief, was among the oldest members of Defendants' security staff.

89. On information and belief, following Mr. McCarty's termination, his duties were assumed by, or his position was filled by, one or more substantially younger employees.

90. Defendants' decision to terminate Mr. McCarty, while not terminating the substantially younger security personnel involved in the same event, supports an inference of age discrimination.

91. Defendants' reliance on incomplete video footage supports an inference of pretext.

92. Defendants' failure to credit Mr. McCarty's explanation supports an inference of pretext.

93. Defendants' failure to meaningfully consider Mr. McCarty's decades of satisfactory service supports an inference of pretext.

94. Defendants' failure to apply progressive discipline or any lesser sanction supports an inference of pretext.

95. Defendants' characterization of Mr. McCarty's conduct as inconsistent with safety is contradicted by the fact that he called for backup, sought police assistance, and helped restrain a dangerous individual.

96. Defendants' stated reason was not the real reason for Mr. McCarty's termination.

97. Mr. McCarty's age was the but-for cause and a determinative factor in Defendants' termination decision.

## COUNT I

### Age Discrimination – ADEA

### (29 U.S.C. § 621 et seq.)

98. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

99. At all relevant times, Mr. McCarty was over the age of forty (40) and was protected by the ADEA.

100. Mr. McCarty was qualified for his security position and performed his job satisfactorily for approximately thirty-three years.

101. Defendants terminated Mr. McCarty's employment.

102. Defendants treated substantially younger employees more favorably, including the younger security personnel involved in the same January 15, 2024 incident, and, on information and belief, replaced Mr. McCarty with or reassigned his duties to substantially younger employees.

103. Defendants' stated reason for terminating Mr. McCarty was false, incomplete, selectively credited, and pretextual.

104. Mr. McCarty's age was the but-for cause of Defendants' decision to terminate his employment.

105. Defendants' violation of the ADEA was willful within the meaning of 29 U.S.C. § 626(b), in that Defendants knew or showed reckless disregard for whether their conduct was prohibited by the ADEA, entitling Mr. McCarty to liquidated damages.

106. As a direct and proximate result of Defendants' violation of the ADEA, Mr. McCarty has suffered damages, including lost wages and benefits.

## COUNT II

### Age Discrimination – PHRA

### (43 P.S. § 951 et seq.)

107. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

108. At all relevant times, Mr. McCarty was protected by the PHRA.

109. Mr. McCarty was qualified for his security position and performed his job satisfactorily.

110. Defendants terminated Mr. McCarty's employment under circumstances giving rise to an inference of age discrimination.

111. Defendants treated substantially younger employees more favorably.

112. Defendants' stated reason for terminating Mr. McCarty was false, incomplete, selectively credited, and pretextual.

113. Mr. McCarty's age was a determinative factor in Defendants' decision to terminate his employment.

114. Defendants violated the PHRA.

115. As a direct and proximate result of Defendants' violation of the PHRA, Mr. McCarty has suffered damages, including lost wages and benefits, emotional distress, humiliation, embarrassment, inconvenience, reputational harm, and loss of professional opportunity.

## V. DAMAGES

116. As a direct and proximate result of Defendants' unlawful conduct, Mr. McCarty suffered damages including, but not limited to, lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, embarrassment, inconvenience, reputational harm, and loss of professional opportunity.

117. Defendants acted intentionally, willfully, and/or with reckless disregard for Mr. McCarty's rights under the ADEA and the PHRA.

118. Mr. McCarty is entitled to all available legal and equitable relief, including back pay, front pay or reinstatement, liquidated damages under the ADEA, compensatory damages (including for emotional distress) under the PHRA, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and any other relief deemed appropriate.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph McCarty respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. A declaratory judgment that Defendants violated Plaintiff's rights under the ADEA and the PHRA;

b. Back pay and lost benefits;

c. Front pay or reinstatement, as appropriate;

d. Liquidated damages under the ADEA, 29 U.S.C. § 626(b);

e. Compensatory damages, including damages for emotional distress, humiliation, and other non-economic harm, under the PHRA;

f. Pre-judgment and post-judgment interest;

g. Reasonable attorneys' fees and costs, including under 29 U.S.C. § 626(b) and 43 P.S. § 962(c.2); and

h. Such other legal and equitable relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 6, 2026

Respectfully submitted,

HENNESSY LAW, P.C.

By: /s/ Brendan D. Hennessy
Brendan D. Hennessy, Esquire
PA Attorney I.D. No. 91831
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3111
bhennessy@hennessylawfirm.com
*Counsel for Plaintiff Joseph McCarty*